**UNITED STATES of America, Appellee,**

v.

**Reynaldo CANALES, Defendant–
Appellant.**

**No. 1851, Docket 95–1673.**

United States Court of Appeals,
Second Circuit.

Argued June 26, 1996.

Decided Aug. 5, 1996.

364

Jeffrey A. Meyer, Assistant United States Attorney, New Haven, CT (Christopher F. Droney, United States Attorney for the District of Connecticut, John W. McReynolds, United States Department of Justice, on the brief), for Appellee United States of America.

Sarah A. Chambers, Assistant Federal Public Defender, New Haven, CT, for Defendant–Appellant Reynaldo Canales.

Before MINER, JACOBS and PARKER, Circuit Judges.

JACOBS, Circuit Judge:

Defendant Reynaldo Canales pled guilty to one count of conspiring to possess with intent to distribute and of conspiring to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. On November 9, 1995, the district court sentenced Canales to 60

months' imprisonment pursuant to U.S.S.G. § 2D1.1(a)(3) & (c)—the relevant provisions for offenses involving "crack" cocaine. Canales appeals his sentence on the grounds (i) that the rule of lenity required the district court to sentence him under the Guidelines section applicable to non-crack cocaine, because the Guidelines' definition of crack cocaine is impermissibly vague; and (ii) that the district court mistakenly believed that it lacked authority to depart downward on the basis of the sentencing disparity between offenses involving crack cocaine and those involving other forms of cocaine and cocaine base.

Because the Guidelines define crack cocaine with sufficient clarity and because Canales admitted to possessing crack cocaine, we reject any rule of lenity claim that Canales might have had. We find no reason to reconsider our well-established holding that a district court lacks statutory authority to depart downward by reason of a supposed "disparity" between the required penalties for offenses involving crack cocaine and for those involving non-crack cocaine. We therefore hold that the district court properly refused to depart, and affirm Canales's sentence.

## BACKGROUND

On at least four occasions between September 29 and November 21, 1994, Canales sold a total of 63.7 grams of crack cocaine and 6.4 grams of powder cocaine to an undercover agent in Bridgeport, Connecticut. Canales was arrested on November 21, and a grand jury returned a six-count indictment against him. On February 28, 1995, Canales pled guilty to one count of distributing and conspiring to possess with intent to distribute "cocaine and cocaine base," in violation of 21 U.S.C. § 846.

After Canales's guilty plea, the United States Probation Department prepared a presentence report ("PSR") which was disclosed to the prosecution and the defense several weeks prior to the initial sentencing date. The PSR states that Canales sold crack cocaine to an undercover agent on four separate occasions, and details each of the four transactions. The PSR also states that, during one of his conversations with the un-

dercover agent, Canales offered to cook powder cocaine to convert it to crack cocaine. The government also submitted to the court (along with the PSR) reports from a laboratory of the Drug Enforcement Administration ("DEA") that conclude that the "white/yellow rock substance" sold by Canales contained "cocaine base." Local Rule 9(a) of the Criminal Local Rules of the District of Connecticut precludes a defendant from raising objections to facts stated in a PSR unless objections thereto are filed within 14 days of disclosure. Canales filed no objections to the PSR.

Canales submitted a sentencing memorandum to the district court in which he contended (as he contends here) that the rule of lenity required the court to sentence him as if he dealt in a form of cocaine other than crack. As an addendum to that memorandum, Canales included a 259-page transcript of a proceeding in *United States v. Davis*, 864 F.Supp. 1303 (N.D.Ga.1994). In that proceeding, four experts testified that crack and non-crack forms of cocaine base are chemically indistinguishable, and that there is no consensus among cocaine experts as to the precise scientific definition of crack.

On November 9, 1995, a sentencing hearing was held before Judge Daly. When prompted by the court, Canales's counsel interposed no objection to the factual findings in the PSR. Before calculating Canales's sentence, the court rejected Canales's contention that the rule of lenity required sentencing under the applicable Guideline provision for non-crack cocaine. The court held that the Guidelines' definition of crack cocaine, set forth at U.S.S.G. § 2D1.1(c) note (D), was sufficiently precise, and that the rule of lenity was therefore inapplicable. The court then refused to depart from the Guidelines range because "[t]he sentencing disparity between cocaine base and cocaine does not justify a downward departure" under the law of this Circuit.

On the conviction for conspiring to distribute 63.7 grams of "cocaine base," as that term is defined by U.S.S.G. § 2D1.1, and 6.4 grams of cocaine powder, Canales's base offense level was 32. The district court re-

duced the base offense level by three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, and by two levels more for meeting the criteria set forth at U.S.S.G. § 5C1.2. The court also granted Canales's request for a two level downward departure based upon his efforts at rehabilitation, yielding a total offense level of 25. Based on a criminal history category of I, the Guideline range was from 57 to 71 months' imprisonment.[1] The district court sentenced Canales to 60 months' imprisonment, to be followed by a five-year term of supervised release. On November 13, 1995, Canales filed a timely notice of appeal.

## DISCUSSION

### A. Lenity.

■ The Guidelines impose more severe penalties for offenses involving the "crack" form of cocaine base than for offenses involving cocaine. U.S.S.G. § 2D1.1(c). A body of judicial literature deplores that distinction. See, e.g., United States v. Anderson, 82 F.3d 436, 445–450 (D.C.Cir.1996) (Wald, J., dissenting) (criticizing higher penalties for crack); United States v. Then, 56 F.3d 464, 466–69 (2d Cir.1995) (Calabresi, J., concurring) (same); United States v. Dumas, 64 F.3d 1427, 1432 (9th Cir.1995) (Boochever, J., concurring) (calling higher penalties "unjustified" and "arbitrary"), cert. denied, —— U.S. ——, 116 S.Ct. 1341, 134 L.Ed.2d 490 (1996); United States v. Willis, 967 F.2d 1220, 1226–27 (8th Cir.1992) (Heaney and Lay, JJ., concurring) (asserting higher penalties have detrimental effect on minorities). Yet every challenge to the sentencing provisions that enforce the "100–to–1" penalty ratio[2] ultimately has been rejected. See, e.g., Anderson, 82 F.3d at 440–41 (subsequent report by Sentencing Commission to Congress gave district court no power to depart); Then, 56 F.3d at 466 (rejecting equal protec-

tion claim); United States v. Moore, 54 F.3d 92, 96–99 (2d Cir.1995) (same), cert. denied, —— U.S. ——, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996); United States v. Stevens, 19 F.3d 93, 97 (2d Cir.1994) ("[W]e join six other circuits that have similarly held that the Guidelines' 100 to 1 ratio . . . does not violate equal protection principles."); Willis, 967 F.2d at 1225 (rejecting equal protection claim).

Guideline section 2D1.1(c) is the operative section for offenses involving "cocaine base" and "cocaine." The Guidelines define "cocaine base" in a note to that provision:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c) note (D). Section 2D1.1 therefore differentiates between crack cocaine and all other forms of cocaine. The note was adopted as an amendment to the Guidelines that became effective in November 1993. The "express purpose of the 1993 amendment was to reject the interpretation of cases such as United States v. Jackson, which had ruled that cocaine base included more than crack." United States v. Montoya, 87 F.3d 621, 623 (2d Cir.1996) (per curiam) (emphasis added and citation omitted). In drafting the current definition of "cocaine base," the Sentencing Commission explained that "[u]nder this amendment, forms of cocaine base other than crack (e.g., coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine." U.S.S.G. Appendix C, Amendment 487 (effective Nov. 1, 1993). It is thus clear that "cocaine base,"

---

1. The court noted that Canales was subject to the 10–year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A) because the offense involved more than 50 grams of a mixture or substance containing cocaine base. Because Canales was a first-time offender, however, he qualified for the exception to the mandatory minimum set forth at 18 U.S.C. § 3553(f). Accordingly, the court calculated Canales's sen-

tence according to the Guidelines without regard to the statutory minimum.

2. This ratio refers to the fact that a defendant convicted of a crime involving 500 grams of powder cocaine would receive the same sentence as a defendant convicted of a crime involving 5 grams of crack cocaine. See United States v. Stevens, 19 F.3d 93, 96 (2d Cir.1994).

as that term is used in § 2D1.1(c), refers *only* to crack.

On appeal, Canales contends that the Guidelines' use of the term "crack" is ambiguous. Canales's argument is predicated on the assertion that there is no difference between the chemical composition of crack and of other forms of non-crack base cocaine. To prove that assertion, Canales relies on the testimony of four cocaine experts adduced in *Davis,* 864 F.Supp. at 1304. According to that testimony, there is no consensus as to what constitutes "crack" in the scientific community. A chemist can only say whether a substance contains cocaine base (*i.e.,* C17-H21-NO4), or cocaine hydrochloride (*i.e.,* cocaine powder, or C17-H21-NO4-*HC1* ). To be sure, crack cocaine is one form of cocaine base. But Canales argues that because there is no scientific distinction between crack and non-crack cocaine base, the Guidelines' definition of crack "lacks any scientific meaning" and is hence facially ambiguous, mandating application of the rule of lenity.

Canales called no witnesses and introduced no exhibits at the sentencing hearing to demonstrate the supposed differences between crack and other forms of cocaine base. The experts who testified in *Davis* were unavailable for questioning by the government in this case. And the issue in *Davis* is different from the issue in this case: In *Davis,* the defendant challenged the *statutory* definition of cocaine base, which differs from the Guidelines definition. *Compare* 21 U.S.C. § 841 *with* U.S.S.G. § 2D1.1(c) note (D).[3] Judge Daly considered but did not expressly adopt or reject the *Davis* transcript. On appeal, the government argues that there is no admissible evidence in the record as to whether

crack cocaine can be differentiated scientifically from other forms of cocaine base.

We agree that Canales has no appropriate factual support on which to base his lenity claim. *See United States v. Thompson,* 51 F.3d 122, 127 (8th Cir.1995) ("As to the novel theory applied in *Davis,* the government correctly points out that there is no evidentiary basis in the present case for this court to consider the issues that were addressed in that decision."); *United States v. Buchanon,* 909 F.Supp. 99, 101 (N.D.N.Y.1995) (declining to adopt findings of *Davis* ). We further note that the propositions on which Canales relies are sufficiently complex and controvertible that they cannot be judicially noticed as true. *See Kaggen v. IRS,* 71 F.3d 1018, 1019 (2d Cir.1995) (judicial notice only of facts that are capable and ready of accurate determination from undisputed sources). *But see United States v. Booker,* 70 F.3d 488, 490 n. 5 (7th Cir.1995) (taking judicial notice of findings in *Davis* ), *cert. denied,* — U.S. —, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996). Even assuming *arguendo* that the rule of lenity applies to the Guidelines,[4] and that Canales has established that there is no scientific difference between crack cocaine and other forms of cocaine base, his lenity claim still fails.

■ The rule of lenity "requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *United States v. Fisher,* 58 F.3d 96, 99 (4th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 329, 133 L.Ed.2d 229 (1995). The rule is inapplicable unless "after a court has seize[d][on] every thing from which aid can be derived, it is still

3. Canales's only other factual evidence was introduced by reference to the Sentencing Commission's 1995 Special Report to Congress, which is discussed in part B, *infra.*

4. Some circuits have refused to apply the rule of lenity to Guidelines provisions. *See United States v. Mrazek,* 998 F.2d 453, 455 (7th Cir.1993) (holding rule of lenity inapplicable to Guidelines); *United States v. Wake,* 948 F.2d 1422, 1434 (5th Cir.1991) (declining to apply rule of lenity to Guidelines because "concerns underlying the rule of lenity are not implicated"), *cert. denied,* 504 U.S. 975, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992). *But see United States v.*

*Cutler,* 36 F.3d 406, 408 (4th Cir.1994) (rule of lenity may be applied to Guidelines); *United States v. Martinez,* 946 F.2d 100, 102 (9th Cir. 1991) (same). We have addressed the rule of lenity in at least two other sentencing cases. *See United States v. Mortimer,* 52 F.3d 429, 434 (2d Cir.1995); *United States v. Litchfield,* 986 F.2d 21, 22–23 (2d Cir.1993) (per curiam). Because in those cases there was no ambiguity that could trigger the rule of lenity, we had no occasion to say whether, where such an ambiguity exists, the rule of lenity would apply to the Guidelines. And because we decide this case on other grounds, we do not reach that issue.

left with an amigu[ity]." *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (internal quotation marks and citation omitted). The particular provision must be facially ambiguous as well as ambiguous as applied to the particular defendant. *United States v. Plaza Health Laboratories, Inc.,* 3 F.3d 643, 646, 649 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). In other words, a defendant is afforded lenity only where a penal provision "did not clearly proscribe [the defendant's] conduct and did not accord him fair warning of the sanctions the law placed on that conduct." *Id.* at 649.

■ The Guidelines' definition of crack is not facially ambiguous. First, statutory terms are to be given their common and ordinary meaning. The street name "crack" is not ambiguous, because crack has a common and ordinary meaning that is understood by Canales (concededly, *see infra* at 368–369), by others in the drug trade, and by citizens in communities that are plagued by the drug. *See United States v. Jackson,* 968 F.2d 158, 163 (2d Cir.) ("[C]rack, the most common form of cocaine base, arguably has a meaning discernible by the community . . . ." (internal quotation marks omitted)), *cert. denied,* 506 U.S. 1024, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). Moreover, the Guidelines provide a fairly precise definition of crack: "[A] form of cocaine base, usually prepared by processing cocaine hydrochloride [powder cocaine] and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c) note (D). That definition adequately describes crack by its tell-tale appearance and by the common method of its manufacture. *See Montoya,* 87 F.3d at 623 ("[E]ven prior to the [1993] amendment the distinction made in the Guidelines between cocaine and cocaine base was clear."). The Guidelines definition is therefore lucid enough for lawyers, dealers, users and citizens.

■ Second, the point of the rule of lenity is for statutes to serve as a "fair warning . . . in language that the common world will understand." *Babbitt v. Sweet Home Chapter,* —— U.S. ——, —— n. 18, 115 S.Ct. 2407, 2416 n. 18, 132 L.Ed.2d 597 (1995) (internal quotation marks omitted). The term crack is commonly understood to denote a certain cocaine substance. Canales contends that a more technical definition of crack cocaine is required. But a more technical definition would not necessarily provide a fairer warning. Chemistry is not always the best language for making distinctions that are well understood in common parlance. For example, ice, water and water vapor are different things, having different uses and properties, yet they have the same chemical formula. The idea that Canales would have been better forewarned about the criminality of his conduct if the Guidelines had been expressed in chemical formulae is not persuasive. We hold that the Guidelines' definition of crack does not create an ambiguity that might justify application of the rule of lenity.

■ Assuming, *arguendo,* that the Guidelines contain some facial ambiguity, Canales's claim still would fail because "[n]o ambiguity arose from the manner in which the statute was narrowly applied to" the defendant. *United States v. Martinez,* 49 F.3d 1398, 1404 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996); *see also United States v. Decker,* 55 F.3d 1509, 1513 (10th Cir.1995) (lenity claim rejected where no ambiguity in Guidelines as applied to defendant); *Plaza Health Laboratories,* 3 F.3d at 649. At oral argument, Canales's counsel conceded that Canales possessed crack cocaine. Prior to trial, Canales made no objection to the PSR's finding that he trafficked in crack cocaine. Canales made no objection to the DEA reports that he sold an undercover agent, on several occasions, a "white chunky substance that field tested positive for the presence of cocaine," and a "white rock/powder substance," or to the DEA reports that the "white rock/powder substance" contained "cocaine base." Nor did Canales object to the PSR's finding that he, on one occasion, advised the undercover agent how to convert powder cocaine into crack cocaine, and offered to do it. The experts in *Davis* may be baffled; but Canales and the Sentencing Commission have the same understanding of what crack is. Because there is no contention that Canales

personally believed that he was dealing in a substance other than crack, the rule of lenity could not in any event be applicable. *See United States v. Long,* 77 F.3d 1060, 1062 (8th Cir.1996) (per curiam) (rejecting lenity claim where defendant made "no argument she was unaware she was dealing in crack"), *petition for cert. filed* (U.S. June 27, 1996) (No. 95–9475).

B.  *Downward Departure.*

■  Canales next contends that the district court erred in thinking that it lacked the power to depart on the ground that the Guidelines impose more severe penalties for criminals who traffic in crack cocaine than for those who traffic in other forms of cocaine. But we have held that a district court has *no authority* to depart based on such considerations:

> A downward departure may not be predicated on the fact that penalties for cocaine crack are more severe than those involving cocaine. A departure on such basis is not permitted because the enhanced penalties for crack reflect a rational and specific congressional aim of deterring drug transactions involving crack.... Hence, the harsher penalties for crack crimes present no basis for downward departure.

*United States v. Haynes,* 985 F.2d 65, 70 (2d Cir.1993); *see also United States v. Chabot,* 70 F.3d 259, 260 (2d Cir.1995) (per curiam).

■  Nevertheless, Canales contends that the Sentencing Commission's 1995 Report to Congress offers a ground for departure and invites us to reconsider our prior decisions. *See* United States Sentencing Commission, Amendments to the Sentencing Guidelines for United States Courts, 60 Fed.Reg. 25074, 25075–76 (1995) (the "1995 Report"). The 1995 Report proposed replacing the 100–to–1 penalty ratio with parity for offenses involving crack and non-crack cocaine. On October 30, 1995, however, Congress rejected the 1–to–1 ratio proposed by the 1995 Report and instructed the Commission to propose different penalties. Pub.L. No. 104–38, § 1, 109 Stat. 334. Although Congress instructed the Commission that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like quantity of powder cocaine," *id.* § 2(a)(1)(A), Congress observed that "the current 100–to–1 quantity ratio may not be the appropriate ratio." H.R.Rep. No. 272, 104th Cong., 1st Sess. 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 335, 337.

Canales argues that, because the 1995 Report suggested that Congress eliminate the penalty differential between crack and non-crack cocaine, and because Congress recognized that a lesser penalty differential may be warranted, the district court acquired statutory power to depart pursuant to 18 U.S.C. § 3553(b). That provision allows departure where there exist "mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." *Id.* The mitigating circumstance promoted here is the view expressed by Congress and by the Commission—but not translated into the Guidelines or the statute—that the 100–to–1 ratio needs work.

The Commission, however, has explained that a district court has no statutory authority to depart under section 3553(b) unless the court is presented with "an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." U.S.S.G. Ch. 1, Pt. A, § 4(b) (policy statement). As the Commission explained, the Guidelines are designed to take into consideration all significant factors in calculating a sentence. "Where the guidelines do not specify an augmentation or diminution, this is generally because the sentencing data did not permit the Commission to conclude that the factor was empirically important in relation to the particular offense." *Id.* In such situations, departure may be warranted under section 3553(b).

Under *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), courts will defer to reasonable interpretations by the Sentencing Commission. *See also Williams v. United States,* 503 U.S. 193, 201, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) (policy statement provides courts with an "authoritative guide"). We have consistently adhered to the atypicality requirement in

cases in which a 3553(b) departure was at issue. *See United States v. Barton,* 76 F.3d 499, 502 (2d Cir.1996); *United States v. Napoli,* 54 F.3d 63, 66 (2d Cir.1995); *United States v. Rogers,* 972 F.2d 489, 493 (2d Cir. 1992); *United States v. Skinner,* 946 F.2d 176, 179 (2d Cir.1991). Other circuits have recognized that atypical circumstances must be present in order to warrant departure under section 3553(b), and that statutory departure is unwarranted if based on a "quintessentially legal" argument. *United States v. Rivera,* 994 F.2d 942, 951 (1st Cir.1993) (Breyer, *C.J.*) (explaining atypicality requirement). *See also United States v. Anderson,* 82 F.3d 436, 439 (D.C.Cir.1996) (statutory departure warranted only where Commission "has completely overlooked a factor" or where a recognized circumstance "is present in such an extreme form that the Guidelines' adjustment for it is inadequate").

■ Here, of course, Canales does not contend that his situation presents an extreme or atypical case. Rather, he emphasizes that the Commission (in the 1995 Report) and Congress (in its response to the 1995 Report), recognized that inadequate consideration was given to the *entire scheme* that imposed the 100-to-1 ratio. Canales, however, ignores a critical sentence in section 3553(b): "In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." The 1995 Report and Congress's rejection of its recommendations are none of the above.[5] Therefore we may not consider either the 1995 Report or Congress's instruction to the Commission[6] in determining whether the district court had statutory power to depart—leaving us just where we were before the 1995 Report was published. A district court has no power to depart based on the sentencing disparity between offenses involving crack and non-crack cocaine. *See,*

*e.g., Chabot,* 70 F.3d at 260; *Haynes,* 985 F.2d at 70.

For the foregoing reasons, we hold the 1995 Report has no effect on this Circuit's precedent, and therefore that the district court properly ruled that it lacked authority to depart. *Accord Anderson,* 82 F.3d at 438 ("ongoing and inchoate efforts" of Congress and the Sentencing Commission "to alter the status quo do not give district Judges authority to depart"); *United States v. Sanchez,* 81 F.3d 9, 11 (1st Cir.1996) (1995 Report provides no authority for statutory departure because "[a] Sentencing Commission's recommendation to the Congress is not the kind of 'circumstance' that [section 3553(b)] covers"), *petition for cert. filed* (U.S. July 8, 1996) (No. 96–5082); *United States v. Jackson,* 84 F.3d 1154, 1161 (9th Cir.1996) ("We do not agree that the Commission's report, or Congress's decision to reject it, affects the precedential value of our ruling that Congress had a rational basis for the 100:1 ratio.").

The judgment of the district court is affirmed.

---

5. The 1995 Report cannot be considered legislative history to a Guideline provision that was passed in 1993.

6. Even if we were to consider Congress's directive to the Commission to propose a revised ratio, we would reach the same result, because "a direction to study a matter, even from Congress, cannot be said to change the state of the law." *Anderson,* 82 F.3d at 440.