**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                             No. 95-5222

DONNIE KEITH HOWELL,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                             No. 95-5253

DONNIE KEITH GARGANUS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                                               No. 95-5365

MAURICIO LOPEZ HOWELL, a/k/a
LoBo,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Fayetteville.
Malcolm J. Howard, District Judge.
(CR-94-56)

Argued: September 25, 1998

Decided: November 19, 1998

Before HAMILTON and MICHAEL, Circuit Judges, and
MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Moon wrote the opinion, in
which Judge Hamilton and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Jose W. Hernandez-Cuebas, Assistant Federal Public
Defender, FEDERAL PUBLIC DEFENDER'S OFFICE, Raleigh,
North Carolina, for Appellants. Jane J. Jackson, Assistant United
States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:**
William A. Webb, Federal Public Defender, Gordon Widenhouse,
FEDERAL PUBLIC DEFENDER'S OFFICE, Raleigh, North Caro-
lina, for Appellant Donnie Howell; Scott F. Wyatt, WYATT,
EARLY, HARRIS & WHEELER, L.L.P., High Point, North Caro-
lina, for Appellant Garganus; Jesse Ingram, INGRAM & INGRAM,
Washington, D.C., for Appellant Mauricio Howell. Janice McKenzie
Cole, United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

MOON, District Judge:

Appellants, Donnie Keith Howell, Donnie Keith Garganus and
Mauricio Lopez Howell, a/k/a Lobo, were convicted in a jury trial of
conspiracy to possess with intent to distribute cocaine base in viola-
tion of 21 U.S.C. § 846. Also, Donnie Keith Howell was convicted of

2

one count and Donnie Keith Garganus was convicted of three counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), and Mauricio Howell was convicted of one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). They seek a new trial based on their claims of trial court error. Finding no reversible error, we affirm.

All three defendants are related, Donnie Keith Howell being the father of Donnie Keith Garganus and Mauricio Lopez Howell, the latter two being half brothers. The indictment charged a conspiracy beginning in or about January, 1992 and continuing to on or about June 2, 1994.

Jerry Holmes, a drug dealer, testified that in 1992 he had given Mauricio Howell $6,000 so that Howell could purchase one-fourth kilogram of crack cocaine. Holmes introduced Mauricio Howell to Thomas Barnhill and Luther Best who began buying crack cocaine from Mauricio Howell in the summer of 1992. During some of the purchases Garganus was also present. On January 20, 1993, Barnhill and Best were arrested while in possession of 25.5 grams of crack cocaine which they had just bought from Mauricio Howell. They agreed to cooperate with the police by purchasing crack cocaine from Mauricio Howell. They arranged for Mauricio Howell to meet them in a parking lot where he was arrested in possession of 25.23 grams of crack cocaine. In 1994, Holmes purchased one-half ounce of crack cocaine from Donnie Howell. The principal witness against Donnie Howell and Donnie Garganus was Garganus' uncle by marriage, Ralph Campbell. Campbell began cooperating with police after he was stopped with ten pounds of marijuana in his car. Garganus was a passenger in the car. Thereafter, at the behest of the police and while wearing a recording device, Campbell made a number of crack cocaine purchases from Garganus and Donnie Howell. On April 12, 1994, Campbell purchased one-half ounce of crack cocaine from Garganus at the home of Donnie Howell. On April 21, 1994, also at Donnie Howell's home, Campbell discussed buying a "big eight" (4.5 ounces) of crack cocaine from Garganus. He told Campbell that Mauricio Howell was going to New York for a supply. Garganus explained that it was a very risky business and that one time he and the two Howells had pooled their money for a load of crack cocaine and lost their money. Later Garganus called Campbell and told him

3

the crack cocaine was expected the next day. Campbell went to Donnie Howell's home on April 23, 1994 and gave him $4,000 for a "big eight" (4.5 ounces) of crack cocaine to be delivered later. On April 27, 1994, at Donnie Howell's residence, Garganus delivered 109.1 grams of crack cocaine to Campbell in two plastic bags.

On May 9, 1994, Campbell and Donnie Howell agreed for Campbell to purchase another "big eight" of crack cocaine. Donnie Howell told Campbell that Garganus would call him. On May 13, 1994, at Donnie Howell's house, Garganus delivered 108.5 grams of crack cocaine to Campbell.

Campbell also testified that one Saturday night in 1994, he took a person to Donnie Howell's house to buy crack cocaine. Donnie Howell was not there. Garganus arrived and Campbell dealt with Garganus whom Campbell saw obtain the crack cocaine from Mauricio Howell. Campbell paid Garganus who gave the money to Mauricio Howell. This transaction apparently was not taped or police sponsored.

I

During its deliberations, the jury sent the trial judge a note asking: "[c]an we convict two of the three on conspiracy charges? Or is it `all or nothing?'" (J.A. 541). Mauricio Howell's counsel requested that the court instruct the jury that they could find two persons guilty without finding the third person guilty. The trial judge believed the answer to the jury's question was clearly within the original jury instructions. He sent the jury a note stating: "Members of the jury, you must read the bill of indictment in conjunction with the jury charge. Read my part on conspiracy; this should clear up the question." (J.A. 398). Those instructions included in part:

> What the evidence in this case <u>must show beyond a reasonable doubt to convict either of the defendants for the conspiracy charge is:</u> First, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and second, that the defendant, the individual then under consideration, be it Mr. Howell or Mr. Garganus or the other Mr. Howell, the defendant, under

4

consideration by you, knowingly and willfully became a member of such conspiracy.

(J.A. 461-62) (emphasis added).

* * * *

If you find that the conspiracy charged in the indictment existed between any of the defendants, you must then decide as to each defendant, on an individual basis, whether he joined the conspiracy with knowledge of its unlawful purpose.

In that connection, each defendant, is entitled to individual consideration of the proof respecting him, including but not limited to, any evidence of his knowledge of a scheme, his status in the group, the level of his participation in activities and the key conversations, and his participation in the design of the unlawful plan or scheme.

(J.A. 466) (emphasis added).

* * * *

Also, the case of each defendant should be considered separately and individually. The fact that you may find any one or more of the defendant's [sic] guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other defendant.

(J.A. 469) (emphasis added).

On appeal a trial court's refusal to grant a supplemental jury instruction is entitled to a high degree of deference and will be reversed only for an abuse of discretion. See United States v. Horton, 921 F.2d 540, 547 (4th Cir. 1990), cert. denied, 501 U.S. 1234 (1991). When faced with a challenge to a court's answer to a jury's request for a supplemental jury's instruction, we inquire whether the answer fairly responded to the jury's question without creating preju-

5

dice. <u>United States v. United Medical and Surgical Supply Corp.</u>, 989 F.2d 1390 (4th Cir. 1993).

Here, the answer to the jury's question was unambiguously covered in the jury instructions. The trial court's answer clearly and fairly answered the jury's inquiry. Therefore, the trial court did not abuse its discretion by refusing to give the jury a mere yes or no answer to its question.

II

Mauricio Howell also claims that when the jury asked whether it could convict only two of the defendants, the court erred in denying his request for a multiple conspiracies instruction. He argues that where the evidence demonstrates the existence of at least one conspiracy unrelated to the one charged in the indictment, the district court must instruct on multiple conspiracies. <u>United States v. Kennedy</u>, 32 F.3d 876, 884 (4th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 939 (1995). This issue is mistakenly premised on the district court having failed to give a multiple conspiracies instruction when it charged the jury. In its charge to the jury, the court instructed in part as follows:

> "Multiple Conspiracies." In this case, the defendants contend that the Government's proof fails to show the existence of only one conspiracy. Rather, they claim that there were actually several separate and independent conspiracies with various groups of members.
>
> Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with these instructions.
>
> Now, proof of several separate and independent conspiracies is not proof of a single, overall conspiracy charged in this indictment unless one of the conspiracies proved happens to be the single conspiracy described....

* * * *

6

> [I]f you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in this indictment. This is so even if you find that some conspiracy other than the one charged existed . . . . By the same token, if you find that a particular [defendant] was a member of another conspiracy, not the one charged in this indictment, then you must acquit the defendant and find him not guilty of the conspiracy charged.

(J.A. 464-466).

This instruction was properly presented to the jury in regard to a single conspiracy versus multiple conspiracies. United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986). Therefore the trial court did not err in refusing to give another multiple conspiracies instruction during deliberations.

III

Next, the defendants claim that the trial judge committed reversible error in limiting cross examination and refusing to admit proffered evidence that would have impeached Ralph Campbell. Whether to admit such evidence is usually left to the sound discretion of the trial judge. United States v. Ham, 198 F.2d 1244, 1252 (4th Cir. 1993). If the error violates constitutional rights, it must be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967).

A.

First, Garganus' attorney asked Campbell whether he had any felony convictions to which Campbell answered "no." (J.A. 252). Next Garganus' attorney asked whether Campbell had ever "been stopped," to which Campbell also answered "no." Id. The government objected to the question, the court sustained the objection, and counsel withdrew the questions. Then Donnie Howell's attorney asked Campbell if he was trying to suggest to the jury that he had never been stopped by the police prior to February 15, 1994. The government objected, asserting that Campbell could only be questioned about prior felony convictions. Campbell's misdemeanor conviction was for communi-

7

cating a threat. Fed. R. Evid. 609 limits impeachment through a witness' prior convictions to felony convictions or to convictions bearing on truth and veracity. Campbell's conviction of communicating threats was thus inadmissible.

However, evidence of a conviction offered to contradict specific statements made by a witness rather than solely for Rule 609 purposes may be allowed. See United States v. Leavis, 853 F.2d 215, 220 (4th Cir. 1988). The defendants allege on appeal that they were not offering to show the fact of the prior conviction to impeach Campbell, but rather pursuing the line of questioning to demonstrate that Campbell had misled the jury regarding his criminal involvement. The trial judge ruled that Garganus' attorney's earlier question to Campbell about being stopped did not open the door to questioning about Campbell's prior misdemeanor conviction.

Although the Sixth Amendment's Confrontation Clause grants a defendant the right to cross examine a government witness bearing on his credibility or bias, Davis v. Alaska, 415 U.S. 308, 316-17 (1974), the trial judge may impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, impairing the witness' safety, or interrogation that is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); United States v. Crockett, 813 F.2d 1310, 1312 (4th Cir.), cert. denied, 484 U.S. 834 (1987). Garganus' counsel's question on cross-examination about whether Campbell had "been stopped," to which Campbell answered "no," did not sufficiently mislead the jury to justify bringing up his otherwise inadmissible misdemeanor conviction. In the first place, the trial judge sustained an objection to the question and the question was withdrawn by Garganus' counsel. Furthermore, there is no reason to believe that Campbell misled the jury regarding his criminal involvement in answering "no" to Garganus counsel's question about being stopped. Even though Campbell answered the question "no," he had already testified on direct that he had been stopped by the police on February 15, 1994, while in possession of 10 pounds of marijuana. Donnie Howell's counsel asked Campbell about this after the judge sustained the objection to her first question. Thus, the trial judge did not abuse his discretion in limiting cross-examination on this issue, which was only marginally relevant. Van Arsdall, 475 U.S. at 679.

8

B.

On cross-examination, Donnie Howell's counsel asked:"Mr. Campbell, when you were in the drug business didn't you try to get your son to help you with that?" to which Campbell answered "no." (J.A. 260). Counsel called Campbell's son, Curtis Campbell, to testify that his father had asked him to sell drugs. The government objected to the question as being extrinsic evidence and inadmissible under Fed. R. Evid. 608. Defendants contend that Campbell had testified on direct that he had cooperated against Donnie Howell because Donnie Howell involved Donnie Howell's own son in drug activities. The trial court ruled that the evidence was too remote to prove motive and was inadmissible pursuant to Rule 608. Rule 608 provides:

> Specific Instances of Conduct. Special instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness

> (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The purpose of this rule is to "prohibit things from getting too far afield--to prevent the proverbial trial within a trial." United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993), cert. denied, 510 U.S. 1143 (1994). See also United States v. Moore, 27 F.3d 969, 974 (4th Cir.), cert. denied, 513 U.S. 979 (1994). The trial court did not abuse its discretion in holding the evidence to be too remote concerning Campbell's truthfulness.

The defendants also argue that Curtis Campbell's testimony was relevant to impeach Ralph Campbell concerning his motive for cooperating and testifying. The defendants argue that Campbell's prior testimony had indicated that his cooperation and testimony against

9

Donnie Howell stemmed in part from Donnie Howell involving his own son in the drug business. This is an inaccurate representation of the record. In the first transcript page to which the defendants cite (J.A. 253), counsel for Donnie Howell asked Campbell whether he told his nephew, Garganus, about his decision to cooperate with authorities and why he had not done so. Campbell responded, "[b]ecause he looked up to his father more than he did me and I knew he wouldn't go against his father. The reason why he was the way he was was because of his father." Id.

In the other pages to which the defendants cite, counsel for Garganus questioned Campbell about whether he loved his nephew. (J.A. 255). Upon receiving an affirmative answer, defense counsel asked whether testifying against Garganus was how he showed his love for Garganus. Campbell justified his testimony by responding that he wanted to see Garganus get out of the drug business. Defense counsel then elicited an admission from Campbell that he had placed Garganus in danger when he cooperated against him. In connection with this line of questioning, Campbell stated that Garganus also "was in danger when he was staying with his dad." (J.A. 256). Contrary to the defendant's suggestion, this testimony does not establish that Campbell claimed that his motivation to cooperate and testify arose because Donnie Howell involved his son in the drug business. The District Court did not err in ruling that the evidence was too remote to have probative value.

C.

Finally, Campbell was asked on cross-examination whether he had been hospitalized for a drug problem and whether he had ever been to a psychiatric ward. Campbell answered "no." (J.A. 259-260). Donnie Howell proffered the testimony of Mary Lewitsky, an employee of Dorothea Dix hospital, who was prepared to testify that the hospital's medical records showed that Campbell had a substance abuse problem that hindered his ability to recall events. After reviewing the records, the trial judge found that, following an event in which Campbell had kicked a police officer more than twelve years prior to this trial, he was evaluated by the hospital for approximately eight days. The records demonstrated that there was no indication of any drug use or abuse, even though Campbell admitted that he abused alcohol at

10

one time. In addition, the report indicated that Campbell was in a depressed mood at the time of the evaluation. The trial court excluded this evidence.

Although a party may be entitled to access a witness's psychiatric records where probative of a witness's perception, credibility, and motivation, United States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983), the testimony concerning those records is not admissible if there is no showing of a correlation between the witness' condition at the time of his treatment and the time of the trial. United States v. Cecil, 836 F.2d 1431 (4th Cir.1988), cert. denied, 487 U.S. 1205 (1988). Because the hospitalization was remote in time and the circumstances were not probative of Campbell's perception, credibility, or motive at this trial, the trial court did not err in refusing to admit the evidence.

IV

Garganus contends that the trial judge erred in refusing to instruct the jury to consider an entrapment defense in his case. A defendant who seeks to raise the affirmative defense of entrapment has the burden of producing evidence that the government "induced" him to commit the charged offense. United States v. Blevins, 960 F.2d 1252, 1257 (4th Cir. 1992). There must be a showing of (1) government inducement of the crime and (2) lack of predisposition on the part of the defendant to engage in the criminal conduct. Matthews v. United States, 485 U.S. 58, 63 (1988); United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993), cert. denied, 510 U.S. 1130 (1994).

To prove inducement, the defendant must introduce evidence of "excessive behavior on the part of the government that could be said to be so inducive to a reasonably firm person that is likely to displace mens rea." United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970), cert. denied, 402 U.S. 950 (1971). Evidence that government agents provided only the opportunity to commit the crime and that the defendant availed himself of the opportunity does not demonstrate inducement. Matthews, 485 U.S. at 66; United States v. Velasquez, 802 F.2d 104, 106 (4th Cir. 1986).

Garganus argues that the mere relationship between him and his uncle, Campbell, constituted government inducement. He argues that

11

Campbell coached him into selling drugs. Other than the relationship, he offers no evidence that the government encouraged him to sell crack cocaine or that he was reluctant to become involved in the crack cocaine sales. On the contrary, Garganus was selling crack cocaine before Campbell approached him as a government informant and Garganus never refused to participate in sales.

For example, the evidence showed that Garganus was with Mauricio Howell during transactions in which Mauricio Howell was selling crack cocaine to two non-defendants. This was approximately two years before undercover agents began buying drugs from Campbell. Also, when Garganus was working with Campbell on drug deals, he commented that Campbell had a "lot to learn" and did not understand the drug business like he did because Campbell had not been around. Garganus even told Campbell about the time that Garganus, Donnie Howell and Mauricio Howell pooled their money for a load of crack cocaine. In addition, before Campbell began working with the police, Garganus was in the car with Campbell when Campbell was stopped by the police for possession of a load of marijuana. While Garganus may not have been involved in that particular transaction, he was selling crack cocaine during that period. Garganus also had bragged to Campbell that Donnie Howell had told him that he had a good head for the drug business. (J.A. 518).

Evidence of past drug offenses or reputation evidence is admissible to show predisposition. United States v. Dickens , 524 F.2d 441, 445 (5th Cir. 1975), cert. denied, 425 U.S. 994 (1976). There was no evidence that a reasonable finder of fact could have believed that Garganus was not predisposed to sell crack cocaine without the government inducing him through the agency of Campbell. Therefore, the trial court did not err in refusing to grant an entrapment instruction.

V

On appeal for the first time, the defendants claim that the government did not prove that the substances possessed and sold in the instant case were crack cocaine. Therefore the defendants argue that the government failed to meet its burden to justify the enhanced penalties under the guidelines and the sentences must be vacated.

12

USSG § 2D1.1(c), note (D) provides the following definition of "cocaine base:"

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

Therefore, § 2D1.1 differentiates between crack cocaine and all other forms of cocaine. The note was adopted as an amendment to the Guidelines that became effective in November 1993. The "express purpose of the 1993 amendment was to reject the interpretation of cases which had ruled that cocaine base included more than crack." United States v. Canales, 91 F.3d 363 (2d Cir. 1996). Therefore, it is clear that "cocaine base," as that term is used in § 2D1.1(c), refers only to crack cocaine. As a result, the government must prove by a preponderance of the evidence that the controlled substance is crack cocaine in order for the defendant to be eligible for an enhanced sentence. United States v. Adams, 125 F.3d 586 (7th Cir. 1997).

The defendants argue that the chemist failed to determine if the cocaine had been combined with sodium bicarbonate in order to satisfy the guidelines' definition of crack. The chemist can only say whether a substance contains cocaine base or cocaine hydrochloride. Canales, 91 F.3d at 363. In Canales, the court found that crack cocaine has a common and ordinary meaning in the drug trade and that the guideline definition describes crack cocaine by its tell-tale appearance and by the common method of its manufacturer. Id. During his testimony, the chemist testified that the controlled substance was cocaine base. His testimony shows that he considers cocaine base to be "crack cocaine."

The defendants claim that crack cocaine must contain sodium bicarbonate. That is not correct. USSG § 2D1.1(c), note (D) says that crack cocaine "usually" possesses sodium bicarbonate. The defendants argue that pursuant to United States v. James, 78 F.3d 851 (3rd Cir.), cert. denied, 117 S. Ct. 128 (1996), their sentences must be vacated. James does not provide persuasive authority. In James, the court found the government failed to prove by a preponderance of the

13

evidence that the form of cocaine base James actually sold was crack cocaine. In the instant case, there was substantial trial testimony that the cocaine base sold and possessed was in fact crack cocaine. Mauricio Howell admitted to being a crack cocaine dealer prior to January 20, 1993, and that what he sold to Barnhill and Best on that date was crack cocaine. Campbell testified that he bought crack cocaine on April 24 and May 13, 1994.

This Court finds that the trial court possessed substantial evidence that the defendants engaged in dealing with crack cocaine as defined by the guidelines. Therefore, this part of defendants' appeal is without merit.

Finding no reversible error, the convictions are affirmed.

AFFIRMED

14