UNITED STATES of America,
Appellee,

v.

Hoang Van TRAN, and Vicheth Som,
Defendants–Appellants.

Nos. 99–1278(L), 99–1389.

United States Court of Appeals,
Second Circuit.

Argued: April 7, 2000

Decided: Nov. 15, 2000

Colleen Cassidy, The Legal Aid Society Federal Defender Division, Appeals Bureau, New York, NY, for Appellant Hoang Van Tran.

J. Scott Porter, Esq., Syracuse, NY, for Appellant Vicheth Som.

Elizabeth S. Riker, Assistant United States Attorney for the Northern District of New York (Daniel J. French, United States Attorney for the Northern District of New York, John G. Duncan, Assistant United States Attorney, on the brief), Syracuse, NY, for Appellee.

Before: VAN GRAAFEILAND, and PARKER, Circuit Judges, and UNDERHILL, District Judge.*

PARKER, Circuit Judge:

Vicheth Som and Hoang Van Tran appeal from the judgments of conviction and sentences of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge) entered December 23, 1998, and February 8, 1999, after their respective pleas of guilty. Som initially argued that the district court: (1) failed properly to apply U.S.S.G. § 2K2.4 Application Note 2 (1998) ("Application Note 2") when it enhanced the offense level of one bank robbery conviction seven levels for discharge of a firearm *and* imposed a ten-year consecutive sentence for violation of 18 U.S.C. § 924(c) in connection with a different bank robbery; (2) failed to consider the statutory factors in assessing restitution and creating a restitution payment schedule; and (3) ordered an onerous and unreasonable payment schedule including installment payments of $25 per month while incarcerated. Som also made several meritless arguments in his *pro se* supplemental brief. Tran originally argued that: (1) the type of firearm used or carried in a § 924(c) violation is an element of the offense and thus the district court improperly imposed the ten-year consecutive sentence for using or carrying a short-barreled rifle when Tran pleaded only to carrying a simple firearm; and (2) even if the type of firearm was only a

---

* The Honorable Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

sentencing factor, the district court improperly used his co-defendant's use of a short-barreled rifle to enhance Tran's sentence.

We held these appeals pending the Supreme Court's decision in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), which held that the type of firearm used or carried in a § 924(c) violation is an element of the offense.[1] Because the indictments of Som and Tran did not include this now essential element of the type of firearm, and the indictments did not otherwise describe the short-barreled rifle upon which their ten-year consecutive sentences for violation of § 924(c) were based, we requested further briefing on the effect of this defect in the indictments on Som and Tran's § 924(c) convictions and sentences.

For the reasons stated below, we hold that the § 924(c) counts of the indictments in these cases limited the scope of the district court's jurisdiction to accepting a guilty plea and entering a conviction and sentence only for the simple firearm offense charged in the indictments. Neither Som nor Tran challenges his conviction for the simple firearm offense. Thus, their § 924(c) convictions are deemed convictions for the simple firearm offense, and we need not vacate those convictions. We must, however, remand for resentencing or reindictment.

The government agrees that Tran's case should be remanded for resentencing based on conviction for the simple firearm offense because Tran pleaded guilty only to the simple firearm offense. We therefore remand Tran's case for that purpose. In so doing, we do not disturb any other findings or conclusions of the district court with regard to Tran's sentence.

The government does not agree, however, that Som's case should be remanded for resentencing. Rather, the government argues that his plea of guilty to aiding and abetting the use of a short-barreled rifle waived his right to challenge the indictment, his failure to challenge the indictment below requires that he show plain error and he has failed to show plain error, and the error was harmless because Som was not prejudiced by it. We reject each of these arguments. Thus, Som's case is also remanded for resentencing based on conviction for the simple firearm offense. We recognize that the government may wish to seek reindictment of Som for the enhanced § 924(c) offense. We take no position at this time on whether the government may seek reindictment because we believe that the district court should address that issue in the first instance. If the government wishes to seek reindictment of Som, the government must move the district court to vacate Som's conviction and dismiss that count of the indictment for that purpose.

Som's initial arguments must also be addressed because they concern portions of his sentence not affected by our conclusion that he must be resentenced on his § 924(c) conviction. Upon considering these arguments, we conclude that the district court properly applied U.S.S.G. § 2K2.4 Application Note 2, but the record

1. The Supreme Court was interpreting 18 U.S.C. § 924(c) as it was before 1998, when it was amended to make clear that the type of weapon involved is a sentencing factor. Som and Tran were convicted pursuant to the unamended version, which provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

18 U.S.C. § 924(c) (1996).

does not sufficiently indicate that the district court considered the statutory factors in determining the restitution payment schedule. We therefore leave undisturbed the district court's findings and conclusions with regard to Som's sentence for the bank robbery counts, except that we vacate the district court's restitution order, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *The Offense Conduct*

On July 1, 1996, Som and another individual committed an armed robbery at Barnett Bank in Margate, Florida (the "Florida Robbery"). Som and his partner both wore face masks and were armed with 9mm semiautomatic handguns. Once inside the bank, Som fired a shot and ordered everyone to get down. Ten bank employees and seven customers were in the bank. Som vaulted the teller counter, ordered the tellers to open their drawers, took the money, and put it in a black gym bag. The money taken totaled approximately $168,000. Som left the bank with his partner and fled in a car driven by a third accomplice. The police were contacted and began pursuit of Som and his two accomplices. At the end of a high speed chase, the robbers crashed into two cars at a red light. Som and the two accomplices fled on foot. The officers shot and wounded the driver, who was carrying the money, and apprehended Som's partner. Som escaped.

Som left the area a few days later, traveling with Hoang Van Tran, a friend of his and the roommate of the getaway driver. They went to Syracuse, New York and stayed with Som's relatives while they cased the area for a bank to rob. They decided to rob an Onbank branch in Syracuse.

On the morning of July 17, 1996, Som and Tran committed armed robbery at Onbank in Syracuse, New York (the "New York Robbery"). They entered the bank wearing gloves and masks. One carried a semiautomatic pistol and the other carried a sawed-off rifle. The robber carrying the sawed-off rifle held the branch manager at gunpoint, while the other jumped over the teller counter and ordered one of the tellers to fill a pillowcase with money from all of the tellers' drawers. Som and Tran then fled the bank in a car. The money taken this time totaled $53,000.

After fleeing the bank, they threw the sawed-off rifle in some bushes near Som's brother's house. Soon thereafter, acting on a tip, police officers stopped Som and Tran and recovered from Som a .45 caliber semi-automatic pistol and a .22 caliber pistol. The police later recovered the money. FBI analysis of a bank photograph of the robbery led the FBI and police to believe that a sawed-off rifle had been involved in the robbery, and they questioned Som regarding the location of that weapon. Som claimed that he was not the one who carried the sawed-off rifle. They also questioned Tran, who also claimed that he was not the one who carried the sawed-off rifle.

### B. *The Guilty Pleas*

On June 24, 1998, Tran pleaded guilty to one count of Bank Robbery, in violation of 18 U.S.C. § 2113(a)(d), and one count of Using or Carrying, or Aiding and Abetting the Use or Carrying, of Firearms During a Crime of Violence, in violation of 18 U.S.C. § 924(c). There was no plea agreement, and Tran never admitted that he carried or used a short-barreled rifle, or aided and abetted the carrying or use of a short-barreled rifle. His plea allocution indicates that he admitted only that he carried a simple firearm.

On August 28, 1998, Som pleaded guilty pursuant to a plea agreement to two counts of Bank Robbery (the Florida Robbery and the New York Robbery), in violation of 18 U.S.C. § 2113(a)(d), and one count of Using or Carrying, or Aiding and Abetting the Use or Carrying, of Firearms During a Crime of Violence, in violation of 18 U.S.C. § 924(c). The crime of violence

associated with the § 924(c) count was the New York Robbery. Shortly after pleading guilty and before sentencing, Som identified the specific location where the sawed-off rifle had been disposed of. Som's statement led the police to the weapon, which had previously been recovered by the Onondaga County Sheriff's Department. Som still maintained that he was not the one who had carried the sawed-off rifle during the New York Robbery.

## C. The Sentencings

On December 11, 1998, Som was sentenced to 207 months imprisonment, followed by three years supervised release, an assessment of $300, and restitution of $27,711.40. Som was sentenced to two concurrent terms of 87 months on the New York and Florida bank robbery counts and one consecutive term of 120 months (ten years) on the firearms count, for a total of 207 months. In the plea agreement, Som admitted that the "dangerous weapon" used in the New York Robbery was a "short barreled rifle" and that, during the commission of the Florida Robbery, one of the assailants discharged a firearm. He also stated in the plea agreement that he "underst[ood] that in addition and consecutive to any sentences imposed in connection with the bank robbery offenses herein, the Court must impose a sentence of ten years in jail for use of a firearm as alleged in Indictment 96–CR–243 (NDNY) in connection with a crime of violence, to wit bank robbery." He also stated that he understood that restitution might be imposed.

The Presentence Report (the "PSR") calculated Som's adjusted offense level for the New York Robbery at 24 and for the Florida Robbery at 31. The level of 31 for the Florida Robbery resulted from a seven-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(A) for discharge of a firearm. No firearms enhancement was added to the New York Robbery, because Application Note 2 forbids such an enhancement where, as here, the defendant is convicted of a corresponding Section 924(c) firearms violation. Pursuant to U.S.S.G. § 3D1.4 (grouping of multiple counts), the combined adjusted offense level for the multiple counts of bank robbery was 32. Except for requesting a three-level downward adjustment for acceptance of responsibility, Som did not object to any factual findings or guideline applications in the PSR. The court adopted the PSR calculation of the offense level, and then granted Som a three-level reduction for acceptance of responsibility. The total adjusted offense level was therefore 29. With a criminal history category of I, Som was sentenced to 87 months on those counts.

The PSR also indicated that Som had no assets or liabilities, had retained counsel, and had been in custody for two years. The PSR considered his earning capacity inside and outside of prison, and considered his family situation. As a result of his financial condition, the PSR stated that "he does not appear to be in a position to pay a fine." The PSR also set out a suggested amount of restitution to be paid by Som to the victims of his crimes.

The court did not adopt the PSR, but stated that it had carefully considered it. Pursuant to the Mandatory Victims Restitution Act of 1996 (the "MVRA"), 18 U.S.C. § 3663A, the court held Som jointly and severally liable with Tran for $10,598.40 in restitution arising out of the New York Robbery. This sum was to compensate the teller who was working at Onbank on the day of the New York Robbery. She had been fired when she stated that she could no longer face working there after living through the worst five minutes of her life. The court also held Som jointly and severally liable with his Florida accomplices for $17,113.00 in restitution, primarily for the hospital expenses incurred for the treatment of Som's accomplice after he was wounded by police. The court ordered that restitution be paid by Som in monthly installments of $25 for the duration of his incarceration, and thereaf-

ter in installments of $200 per month or 10% of his gross income, whichever was greater. The court imposed a special assessment but did not impose a fine.

On February 1, 1999, Tran was sentenced to 140 months imprisonment, followed by three years supervised release, an assessment of $200, and restitution of $10,598.40. Tran was sentenced to 20 months' imprisonment on the New York robbery count and 120 months' (ten years') imprisonment on the firearms count, to be served consecutively.

The PSR applied a base offense level of 20 for the bank robbery count, added two levels for theft of property from a financial institution, and added two levels for the amount stolen. The PSR recommended a two-level reduction for acceptance of responsibility, for a total offense level of 22. The PSR also indicated that Tran, who was 17 years old at the time of the offense, had an extraordinarily difficult life. His IQ was determined to be 73, putting him in the borderline range of mental capability. The PSR did not, however, recommend any departure based on these circumstances. Tran's criminal history category was II. The recommended sentencing range for the bank robbery count was thus 46–57 months imprisonment. For the § 924(c) count, the PSR recommended a ten-year consecutive sentence based on Tran's use or carrying of a short-barreled rifle.

The defense objected to the PSR, arguing that Tran was entitled to a three-level reduction for acceptance of responsibility and that he should receive a five-year consecutive sentence for the § 924(c) count based on his carrying a *handgun*. The court granted the three-level reduction for acceptance of responsibility, making the total offense level for the bank robbery count 21. The court also granted Tran a downward departure pursuant to U.S.S.G. § 5K2.0 based upon his age and factors that put his case outside the heartland. With the departure to an offense level of 19, and a Criminal History Category of II,

the court imposed a sentence of 20 months for the bank robbery count. The court found by a preponderance of the evidence that Tran was not the one carrying the short-barreled rifle, but the court nevertheless imposed the ten-year consecutive sentence for the § 924(c) count because it found that Tran was aware of the short-barreled rifle during the commission of the offense and therefore aided and abetted the use of the short-barreled rifle.

## II. DISCUSSION

### A. *The Defect in the Section 924(c) Counts of the Indictments*

■ The Grand Jury Clause of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. We have said that

> [t]o comport with the Fifth and Sixth Amendments, a criminal indictment must (1) contain all of the elements of the offense so as to fairly inform the defendant of the charges against him, and (2) enable the defendant to plead double jeopardy in defense of future prosecutions for the same offense.

*United States v. Santeramo,* 45 F.3d 622, 624 (2d cir.1995) (per curiam). The requirement that an indictment contain all of the elements of the offense provides a defendant with notice and protection from double jeopardy. *See* Const. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"); Const. amend. VI ("the accused shall enjoy the right ... to be informed of the nature and cause of the accusation"). An indictment also "limit[s] [the defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The government concedes that the indictments here are defective in that they are missing an essential element of the "separate, aggravated crime," *Castillo*, 120 S.Ct. at 2096, for which Som and Tran were sentenced. *See Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (enhancement elements must be "charged in an indictment"). The government argues, however, that (1) Som's plea of guilty to aiding and abetting the use of a short-barreled rifle retroactively waived his right to be charged by a grand jury; (2) his failure to challenge the indictment below requires that he show plain error and he has failed to show plain error; and (3) the error was harmless because Som has failed to show any prejudice insomuch as he received adequate notice that he was being charged with the enhanced offense and he is protected from double jeopardy. We reject each of these arguments.

 First, pleading guilty does not waive a defendant's right to indictment by a grand jury. *See United States v. Meacham*, 626 F.2d 503, 509–10 (5th Cir.1980). "Waiver of an indictment is an act clothed in formality. . . . [T]he waiver must be made in open court, defendants must be informed of the nature of and the cause for the accusation, and the court must be satisfied that the defendants waive their rights knowingly, intelligently and voluntarily." *United States v. Ferguson*, 758 F.2d 843, 850–51 (2d Cir.1985). Here, the record does not show that Som knowingly, intelligently and voluntarily waived his right to be tried and convicted only upon charges presented by a grand jury.

Contrary to the government's argument, pleading guilty is not the equivalent of a waiver of the right to be charged by a grand jury. "By pleading guilty, a defendant waives many of the objections to his conviction that he otherwise could have raised on appeal. He does not, however, waive all objections. . . . The objection that the indictment fails to charge an offense is not waived by a guilty plea."

*Meacham*, 626 F.2d at 509–10 (relying on *Menna v. New York*, 423 U.S. 61, 62–63, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) ("A guilty plea . . . renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. . . . We . . . hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.")); *see also United States v. Prentiss*, 206 F.3d 960, 976–77 (10th Cir.2000) (stipulating at trial to the element missing from the indictment did not waive right to grand jury indictment because "the failure of the indictment to allege a federal crime cannot be cured by proof at trial by any means"); *United States v. Spinner*, 180 F.3d 514, 516 (3d Cir.1999); *United States v. Cabrera–Teran*, 168 F.3d 141, 143 (5th Cir.1999). Here, the claim is that the government may not constitutionally prosecute the "charge" of the enhanced firearms offense because it is not charged in an indictment. Som could not, then, have pleaded guilty to an aggravated crime not charged in the indictment. Thus, Som has not waived this claim based on the defect in the indictment.

 Second, plain error review is inappropriate where the defect in the indictment is jurisdictional. Where an indictment fails to allege each material element of the offense, it fails to charge that offense. *See Cabrera–Teran*, 168 F.3d at 143. "[A] 'failure of the indictment to charge an offense may be treated as [a] jurisdictional' defect, . . . and an appellate court must notice such a flaw even if the issue was raised neither in the district court nor on appeal." *United States v. Foley*, 73 F.3d 484, 488 (2d Cir.1996) (quoting *United States v. Doyle*, 348 F.2d 715, 718 (2d Cir.1965)), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *see also* Fed.R.Crim.P. 12(b)(2) (objection that an indictment "fails to show jurisdiction in the court or to charge an

offense ... *shall* be noticed by the court at any time during the pendency of the proceedings") (emphasis added).

The notion that an indictment is a prerequisite to jurisdiction over a criminal case in the federal courts is long established. In *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), the Supreme Court first stated its "opinion that an indictment found by a grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged." 121 U.S. at 12–13, 7 S.Ct. 781. For this proposition, "[t]he *Bain* case ... has never been disapproved...." *Stirone,* 361 U.S. at 218, 80 S.Ct. 270. Consequently,

> [i]t has long been a settled rule of law in the United States Courts that the Declaration of Article 5 of the Amendments to the Constitution that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" is jurisdictional and no court of the United States has authority to try a prisoner without indictment or presentment in such cases.

*United States v. Krepper,* 159 F.2d 958, 970 (3d Cir.1946) (quoting U.S. Const. amend. V).

 The government argues based on *Foley* and *United States v. Glick,* 142 F.3d 520, 523 n. 3 (2d Cir.1998) (citing *Foley,* 73 F.3d at 488), that the defect in Som's indictment is subject to plain error review because it was not raised below. *Foley*'s statement that plain error review applies to a challenge that the indictment does not state an offense is not only contradicted by other statements in *Foley,* it is dicta. In discussing what the Court characterized as a "jurisdictional defect," 73 F.3d at 488, the Court first stated that "an appellate court that sees that the lower court proceeded without subject matter jurisdiction *must* correct the error even if neither party brought it to the lower court's attention," *id.* at 487 (emphasis added), and that "an appellate court *must* notice such

a flaw even if the issue was raised neither in the district court nor on appeal," *id.* at 488 (emphasis added) (citing Fed. R.Crim.P. 12(b)(2)). After stating that the appellate court *must* notice and correct the error, the court then inconsistently concluded that "[i]ssues that go to whether the conduct alleged and proved is punishable under the statute charged are thus cognizable on appeal under the plain-error doctrine." *Id.* Noticing plain error is discretionary. *See* Fed.R.Crim.P. 52(b) ("Plain errors ... *may* be noticed...."). Where the district court acted without subject matter jurisdiction, this Court does not have the discretion not to notice and correct the error; it must notice and correct the error. *See Foley,* 73 F.3d at 487–88. It is therefore inappropriate to resort to discretionary plain error review in such cases.

Furthermore, *Foley* never addressed the argument that the indictment failed to state an offense. Instead, the Court addressed defendant's sufficiency-of-the-evidence argument and held that the government failed to prove Foley guilty of the offense at trial. *Id.* at 493 ("[W]e conclude that the government failed to prove that Foley was guilty of an offense under § 666(a)(1)(B), and his conviction on the bribery count must be reversed."). Thus, *Foley*'s statement with regard to reviewing a jurisdictional defect in an indictment is dicta because *Foley* never reviewed the sufficiency of the indictment.

In *Glick,* the Court cited *Foley* for the proposition that the defendant's argument that the indictment was missing an "implicit" element of the offense was reviewed for plain error. 142 F.3d at 523 n. 3. The Court did not, however, do a plain error review. It held that there was no error because the element that the defendant suggested was missing from the indictment was not an element of the crime. *Id.* at 524. There was no jurisdictional or other error to be noticed. *Glick,* therefore, is also inapposite.

■ In its supplemental brief, the government now appears to acknowledge that "truly" jurisdictional defects must be noticed and corrected by the appellate court regardless of whether the defendant raised the issue. The government maintains, however, that an indictment is only *jurisdictionally* defective if it charges *no* federal offense at all. Here the indictments did charge a federal offense, the simple firearm offense. According to the government then, by charging a federal offense, these indictments provided the necessary jurisdiction; and, the failure to include the "enhancing" element in the indictments may have been a constitutional error, but it was not a jurisdictional error. Thus, the government contends, plain error review definitely applies.

We cannot accept the government's characterization of the district court's jurisdiction. As the Court of Appeals for the District of Columbia held in *Crosby v. United States*, 339 F.2d 743 (D.C.Cir.1964), "[t]he *scope* of the indictment goes to the existence of the trial court's subject-matter jurisdiction." 339 F.2d at 744 (emphasis added) (citing *Stirone*, 361 U.S. at 213, 80 S.Ct. 270; *Ex parte Bain*, 121 U.S. at 12–13, 7 S.Ct. 781). In *Crosby*, the indictment charged the defendant with one offense, robbery, but the jury was instructed on a different offense, assault with a deadly weapon. The same facts that would have supported conviction on the charged offense supported conviction on the uncharged offense, and the defendant did not object to the jury instruction. *Id.* On appeal, the government essentially asserted that by failing to object, "appellant has waived his right to be charged by a grand jury for the precise offense of which he was convicted." *Id.* The court disagreed, holding that "the trial court lacked jurisdiction to convict appellant of that offense under the present indictment. To hold otherwise would in effect be to allow judicial amendment of the grand jury's indictment; this cannot be accomplished even with a defendant's consent." *Id.* at 744–45 (citing *Stirone*, 361 U.S. at 213, 80 S.Ct.

270; *Ex parte Bain*, 121 U.S. at 12–13, 7 S.Ct. 781). This makes perfect sense. A prosecutor cannot make an end run around the *jurisdictional* prerequisite of an indictment by charging *any* federal offense, and then proceeding to prosecute a defendant for a different, albeit related, federal offense. Likewise, a prosecutor cannot make this jurisdictional end run, and then urge the court to sentence the defendant for an offense for which the defendant was neither charged nor convicted.

■ In *Stirone*, the Supreme Court also characterized the indictment as jurisdictional in both nature and scope:

> The *Bain* case, which has never been disapproved, stands for the rule that a court *cannot permit a defendant to be tried on charges that are not made in the indictment against him.* . . . [The indictment] *limit[s] [the defendant's] jeopardy to offenses charged by [the grand jury].* Thus, the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for [doing something] which the grand jury did not charge.

361 U.S. at 218, 80 S.Ct. 270 (emphasis added). In keeping with the Supreme Court's characterization of the indictment as jurisdictional in nature *and* scope, we hold that the prosecution does not have jurisdiction to prosecute a defendant, and the district court does not have jurisdiction to try, convict, or sentence a defendant, for any offense other than the one charged in the indictment. In other words, the defendant cannot be "held to answer" for any offense not charged in an indictment returned by a grand jury.

In this case, the district court did not have jurisdiction to enter a conviction or impose a sentence for an offense not charged in the indictment, namely the "separate, aggravated crime" of using or carrying a short-barreled rifle, or aiding and abetting the use or carrying of a

short-barreled rifle. *Castillo*, 120 S.Ct. at 2096. Rather, the district court's jurisdiction was limited to trying (in this case accepting a guilty plea from) these defendants, and thereafter convicting and sentencing these defendants, on the offense charged in the indictment, namely the use or carrying, or aiding and abetting the use or carrying, of a simple firearm.

▮ Finally, the government's argument that the error was harmless because Som was not prejudiced by this defect in the indictment, inasmuch as he received notice, admitted the conduct, and is protected from double jeopardy, is misplaced. Because the defect is jurisdictional, it cannot be cured by the absence of prejudice to the defendant. *See United States v. Brown*, 995 F.2d 1493, 1505 (10th Cir.1993) ("[F]ailure of the indictment to allege all the essential elements of an offense . . . is a jurisdictional defect requiring dismissal. . . . The absence of prejudice to the defendant does not cure what is necessarily a substantive, jurisdictional defect in the indictment."). Deprivation of "the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury . . . is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone*, 361 U.S. at 217, 80 S.Ct. 270; *see Prentiss*, 206 F.3d at 976 ("Applying harmless error analysis to the total omission of an essential element would al-

low the prosecution to circumvent the grand jury proceeding."); *United States v. Spruill*, 118 F.3d 221, 227 (4th Cir.1997) ("It is well established . . . that failure to recite an essential element of the offense in the indictment is not amenable to harmless error review."). *But see United States v. Mojica–Baez*, 229 F.3d 292, 309–11 (1st Cir.2000) (holding that error of leaving the type of firearm out of § 924(c) count of indictment subject to harmless error review).[2]

▮ In sum, unless the right to be charged by an indictment containing all of the material elements of an offense is voluntarily, intelligently, and knowingly waived by the defendant, the indictment as returned limits the scope of the district court's jurisdiction to the offense charged in the indictment. If the district court acts beyond its jurisdiction by trying, accepting a guilty plea from, convicting, or sentencing a defendant for an offense not charged in the indictment, this Court must notice such error and act accordingly to correct it, regardless of whether the defendant has raised the issue.

▮ In this case, the indictments charged § 924(c) simple firearm offenses, and the district court had jurisdiction to convict and sentence Som and Tran for that offense. Because Som and Tran do not challenge their guilty pleas to or con-

---

**2.** It is important to address two issues raised by *Mojica–Baez*. First, the *Mojica–Baez* court acknowledged that the failure of an indictment to state an essential element of an offense must be noticed by the court at any time during the proceedings, rather than subject to discretionary plain error review. *Id.* at 308–09. Apparently the court rested this proposition on Fed.R.Crim.P. 12(b) alone because it went on to determine that the error was harmless without addressing whether an indictment's failure to charge the offense of conviction is a *jurisdictional* defect. Thus, the First Circuit has not confronted directly the issue of whether this type of error is jurisdictional. To the extent that *Mojica–Baez* can be read to conclude that this type of error is not jurisdictional, we reject that conclusion here.

Second, the *Mojica–Baez* court felt "compelled" by *Neder v. United States*, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that failure to submit an element to the jury is trial error subject to harmless error review), to conduct a harmless error review. In *Prentiss*, the Tenth Circuit convincingly reasoned that *Neder* was inapplicable to the failure of an indictment to state an offense. *See Prentiss*, 206 F.3d at 977 n. 14. We find the reasoning of the Tenth Circuit more persuasive. In addition to the reasoning of the Tenth Circuit, we add that *Neder* concerned a constitutional error in the trial process, not an error that deprived the court of subject matter jurisdiction, which is never subject to harmless error review.

victions for that offense, their § 924(c) convictions are deemed to be convictions for the simple firearm offense and need not be vacated. The district court acted outside its jurisdiction, however, in sentencing Som and Tran for the enhanced firearm offense not charged in their indictments. We therefore vacate their sentences and remand for resentencing based on their convictions for the simple firearm offense. *See United States v. Jones,* 172 F.3d 1115 (9th Cir.1999) (remanding case to district court for resentencing without an enhancement for serious bodily injury because Supreme Court held that serious bodily injury is an element of the offense rather than a sentencing factor), *on remand from Jones,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *United States v. Chandler,* 125 F.3d 892, 898 (5th Cir.1997) (concluding that 18 U.S.C. § 860 enhancement is an element of a separate offense and remanding for resentencing based on conviction for unenhanced § 841(a)(1) offense charged in indictment).

As noted earlier, we take no position at this time on whether the government may seek reindictment of Som because we believe that the district court should address the issue in the first instance. Therefore, if the government wishes to seek reindictment of Som on the § 924(c) count, the government must move the district court to vacate Som's conviction and dismiss that count of the indictment for that purpose.

B. *Double Counting Som's Use of Firearms*

Section 2K2.4 of the Guidelines covers a defendant's use of a firearm, armor-piercing ammunition, or explosives during or in relation to certain crimes, in violation of 18 U.S.C. §§ 844(h), 924(c), or 929(a). Application Note 2 of this section provides:

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (*e.g.,* § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

U.S.S.G. § 2K2.4 Application Note 2. Som asserts that pursuant to Application Note 2, adding a seven-level firearm enhancement to his offense level for the Florida Robbery and imposing a consecutive sentence for violation of § 924(c) in connection with the New York Robbery, constitutes improper double counting.[3]

Som acknowledges that the same conduct is not being punished twice because the § 924(c) conviction and sentence was for the use of a firearm in the *New York* Robbery on July 17, 1996, and the offense-level enhancement was for the discharge of a different firearm in the *Florida* Robbery on July 1, 1996. Instead, Som argues that the "grouping" of the Florida Robbery with the New York Robbery for purposes of determining an adjusted offense level, which included a firearms enhancement, caused the Florida Robbery to become an "underlying offense" for purposes of Application Note 2. He also argues that this Court should apply the rule of lenity when interpreting this Guidelines provision.

Som did not raise this issue below and therefore concedes that this Court reviews the imposition of the firearms enhancement for "plain error." Fed.R.Civ.P. 52(b). Som acknowledges that the First, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits have rejected his argument, but asks this Court to "exercise its own judgment and find double counting in this instance." We join our sister circuits in rejecting Som's proffered interpretation of U.S.S.G. § 2K2.4 Application Note 2.

Som first argues that we should apply the rule of lenity when interpreting Application Note 2. The rule of lenity "requires the sentencing court to

---

**3.** Despite the fact that we vacated Som's ten-year consecutive sentence for the enhanced § 924(c) offense, Som is still subject to a five-year consecutive sentence for the simple § 924(c) offense.

impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *United States v. Canales*, 91 F.3d 363, 367 (2d Cir.1996) (internal quotations omitted). Where a provision is not ambiguous, however, the Court need not apply the rule of lenity. *See id.* at 367–68 ("The rule is inapplicable unless 'after a court has seize[d][on] every thing from which aid can be derived, it is still left with an ambigu[ity].'") (quoting *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)). More importantly, the particular provision "must be facially ambiguous as well as ambiguous as applied to the particular defendant." *Id.* at 368 (citing *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 646, 649 (2d Cir.1993)). In other words, a defendant is afforded lenity only where a penal provision "did not accord him fair warning of the sanctions the law placed on that conduct." *Plaza Health*, 3 F.3d at 649.

This Court has not decided whether the rule of lenity applies to interpretation of the Guidelines,[4] and we need not decide the issue here because Application Note 2 is not ambiguous as applied to Som. Application Note 2 clearly does not apply to sentencing for offenses that have nothing to do with the firearms count for which the ten-year consecutive sentence is being imposed. Thus the rule of lenity will not be applied in this case.

 The interpretation of Application Note 2 pressed upon us by Som is simply not a logical interpretation. Application Note 2 seeks to prevent enhancement of a base offense level, which increases the guidelines range of imprisonment, *and* imposition of a consecutive sentence, for a defendant's using or carrying a firearm in relation to *one* offense. According-

ly, Som may be punished once for the conduct of discharging a firearm in the course of the Florida Robbery (through a seven-level enhancement to the base offense level for that crime), and once for the conduct of using a different firearm in relation to the New York Robbery (through imposition of a consecutive sentence pursuant to 18 U.S.C. § 924(c)). This properly reflects his use of a firearm in two separate offenses. Furthermore, the multiple-count grouping of the Florida and New York Robberies for purposes of determining a combined offense level does not convert the Florida Robbery into an "underlying offense" of the section 924(c) violation for purposes of Application Note 2. As set out in U.S.S.G. § 1B1.1(d), specific offense enhancements are determined prior to grouping, and the offense level for each of the multiple counts is not readjusted after grouping.

In *United States v. Mrazek*, 998 F.2d 453 (7th Cir.1993), the Seventh Circuit rejected the very interpretation of Application Note 2 urged upon us in this case:

Mrazek observes that the grouping rules convert multiple counts into the equivalent of a single count with a single offense level and sentencing range. The operation of the grouping rules produces a final offense level dominated by the most serious offense. Because the first two robberies were enhanced by five levels for the use of the gun, they became the foundation for the final offense level. That, Mrazek insists, is double counting: in the end, his sentence reflected both a five-level enhancement for the use of a gun and the five-year consecutive sentence.

Nothing has been counted twice. There were three robberies, all armed.

---

**4.** In *Canales*, this Court acknowledged that it had not decided "whether the rule of lenity should be applied to the Guidelines." 91 F.3d at 367 n. 4. The Court did not take up the task in *Canales*, but rather decided that the Guideline provision in question was not ambiguous, and that the rule of lenity did not

apply for that reason. *Id.; see United States v. Westcott*, 159 F.3d 107, 117 n. 5 (2d Cir. 1998) ("We therefore do not reach the government's assertion that the rule of lenity does not apply to the Sentencing Guidelines.").

The gun was taken into account once per robbery—via § 2B3.1(b)(2)(C) [enhancement] for the first two robberies and via § 924(c) [firearms conviction] for the third robbery.... [W]hy should three armed robberies be treated identically to one armed and two unarmed robberies?

*Id.* at 455. The court also specifically rejected the assertion that grouping multiple offenses turned all of the multiple offenses into "underlying offenses":

Mrazek contends that after grouping the offenses lose their distinctness, so that all three robberies are "the underlying offense." But grouping comes after the offense level has been determined for each separate crime; the grouping process does not call for redetermination of the offense level applicable to each crime. Thus "the underlying offense" must be the crime during which, by using the gun, the defendant violated § 924(c). *See United States v. Nakagawa,* 924 F.2d 800, 805 (9th Cir.1991); *United States v. Kimmons,* 965 F.2d 1001, 1011 (11th Cir.1992). Application Note 2 is not ambiguous.... The Guidelines do not require the court to treat the other two robberies as if they had been unarmed.

*Id.; see also United States v. Chin–Sung Park,* 167 F.3d 1258, 1261 (9th Cir.1999); *United States v. McCarthy,* 77 F.3d 522, 536 (1st Cir.1996); *United States v. Blake,* 59 F.3d 138, 140 (10th Cir.1995) ("Were we to accept the defendant's proposed interpretation, once there was a separate statutory firearm conviction, no *other* crime which happened to involve a firearm where the sentence could run consecutively, could have its base offense level enhanced for the use of the firearm."). We agree with this reasoning in *Mrazek.*

Application Note 2 is not ambiguous as applied to Som. The district court properly applied the Guidelines to enhance Som's offense level for discharge of a firearm in the Florida Robbery, notwithstanding that Som was already subject to a mandatory consecutive sentence for the use of a dif-ferent firearm in the New York Robbery. On remand, the court may apply the Guidelines in the same manner, except that the mandatory consecutive sentence will be five years instead of ten years.

## C. *Som's Restitution Order*

Under the MVRA, imposition of restitution for the losses suffered by the victims of certain offenses is mandatory. *See* 18 U.S.C. § 3664(f)(1)(A) ("[T]he court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant.*") (emphasis added). Under 18 U.S.C. § 3663A, which governs the imposition of restitution in this case, the court must issue and enforce the restitution order "in accordance with section 3664." 18 U.S.C. § 3663A(d). Section 3664 instructs the district court to

specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant[,] including obligations to dependents.

18 U.S.C. § 3664(f)(2).

Som does not challenge the imposition of restitution, but rather contends that the district court failed in its duty to consider the statutory factors, including his earning capacity, before determining a payment schedule for his payment of restitution. Som is incorrect in asserting that 28 C.F.R. §§ 545.10 & 545.11 and 18 U.S.C. § 3663 required the district court to ascertain his earning abilities before

imposing a restitution payment schedule,[5] but he is correct that the district court is required to consider certain statutory factors. As noted earlier, 18 U.S.C. § 3664 instructs the district court that it must consider certain factors before imposing a restitution payment schedule. *See* 18 U.S.C. § 3664(f)(2).

 Som did not object below to the installment plan for payment of restitution, and therefore we review the restitution order for plain error. *See* Fed. R.Crim.P. 52(b). The government concedes that Som's failure to object below "is no bar to appellate review because improperly ordered restitution constitutes an illegal sentence amounting to plain error." *United States v. Thompson*, 113 F.3d 13, 15 (2d Cir.1997) (citations omitted) (failed to raise objection below); *see United States v. Kinlock*, 174 F.3d 297, 299 (2d Cir.1999) (same). Thus, " '[i]f the record fails to demonstrate that the court considered these mandatory factors, [we] will vacate [the] restitution order.' " *Kinlock*, 174 F.3d at 299–300 (quoting *United States v. Giwah*, 84 F.3d 109, 114 (2d Cir.1996)); *see Thompson*, 113 F.3d at 14. If the record reflects that the district court considered the statutory factors, we review the restitution order for abuse of discretion. *See Kinlock*, 174 F.3d at 300; *Thompson*, 113 F.3d at 15.

"The threshold issue ... is whether the record reflects that the district court engaged in the factor analysis which Congress has mandated...." *Giwah*, 84 F.3d at 114. We find that it does not, and we therefore vacate the restitution order.

In *Kinlock*, as in this case, the defendant was challenging the "setting [of] terms for the payment of restitution." 174 F.3d at 299. The Court first stated what the record must provide in order to suffi-

ciently indicate that the district court considered the appropriate factors:

> While the district court need not make detailed factual findings on each factor, the record must demonstrate that the court considered the factors. Moreover, even if the presentence report adequately considers the statutory factors, that fact alone is not enough to insulate a restitution order from being vacated by this court. Rather, there must be an affirmative act or statement allowing an inference that the district court in fact considered the defendant's ability to pay.

*Id.* at 300 (internal quotations and citations omitted); *see Thompson*, 113 F.3d at 15. "Notwithstanding the sentencing court's obligation to consider the factors ..., we do not insist on any particular recitation of facts or references to the record. Further, failure to make such a recitation or reference cannot be an adequate basis for appeal of an otherwise legal sentence." *Kinlock*, 174 F.3d at 301 (citations omitted).

After reviewing the entire record, and making all reasonable inferences from the district court's statements, the *Kinlock* Court found that the record adequately indicated that the district court had considered the statutory factors:

> Just after imposing restitution, Judge Kahn stated, "[a]fter considering your present financial condition and the period of incarceration just imposed, the Court does not impose any fine or cost of incarceration or supervised release." This refusal to impose a fine or costs supports an inference that the court considered Kinlock's ability to pay restitution. Furthermore, this court has held that the adoption of the PSR "tends to support a finding that the court in fact considered the mandatory factors." Here, we may infer that the court con-

5. Sections 545.10 and 545.11 of the C.F.R. instruct the Bureau of Prison staff, not the district court, to help an inmate develop a financial plan for paying any financial obligations of the inmate's sentence. Moreover,

the restitution order in this case falls under 18 U.S.C. § 3663A, which provides for mandatory restitution to victims of violent crimes, rather than 18 U.S.C. § 3663, which is the general restitution provision.

sidered the statutory factors not only because the PSR, which the district court adopted by a preponderance of the evidence, contained six paragraphs detailing Kinlock's financial situation, ability to pay, family income, financial needs and the needs of his dependents, but also because the court specifically commented on Kinlock's family expenses and his earning potential.... With respect to Kinlock's future ability to pay, Judge Kahn stated, "Obviously, you are bright, you've got talent and you can succeed honestly in life." These remarks indicate that the restitution order was a proper exercise of discretion.... Therefore, we find that the record on the whole permits a reasonable inference that Judge Kahn considered the statutory factors in deciding to impose restitution.

*Id.* at 300–01 (citations omitted).

In this case, the entire restitution order consists of the following:

> [Y]ou are further ordered to pay restitution jointly and severally ... to be paid in monthly installments $25 per month while you're incarcerated and in monthly installments no less than $200 per month or 10 percent of your gross income, whichever's greater, when you are released from prison. Interest on the restitution is waived.

The district court stated that it had reviewed the PSR in detail in the context of determining the applicable offense level, but the court did not mention the PSR in the context of imposing the restitution order.

The PSR in this case contains detailed findings about Som's intelligence and ability to work in prison and indicates that he is single with no assets or liabilities, but the district court did not adopt the findings of the PSR. The court did not discuss Som's "potential," or mention his ability to pay. The court did not give any indication of why it was not imposing interest or a fine. We have held "that it is not enough for a district court to have before it a PSR which includes information that would be relevant to the consideration mandated by § 3364[ ]." *Giwah*, 84 F.3d at 114. "[E]ven if the presentence report adequately considers the statutory factors, that fact alone is not enough to insulate a restitution order from being vacated by this court." *Kinlock*, 174 F.3d at 300 (internal alterations and quotations omitted). The district court's statement that it reviewed the PSR in detail is not enough to indicate that it considered the specific statutory factors in imposing the restitution payment schedule.

The only other "act or statement" in this record that allows any inference that the district court considered Som's ability to pay is the court's act of imposing payment of only $25 per month during incarceration, versus a percentage of income after incarceration. This simply is not sufficient to indicate to us that the court "engaged in the factor analysis which Congress has mandated." *Giwah*, 84 F.3d at 114.

On this record, we cannot say that the district court considered "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; [the] projected earnings and other income of the defendant; and ... any financial obligations of the defendant[,] including obligations to dependants." 18 U.S.C. § 3664(f)(2)(A)-(C). Thus, we must vacate the restitution order and remand with the direction that the district court develop an adequate record reflecting its consideration of these factors.

## III. CONCLUSION

For the foregoing reasons, we remand both cases for resentencing based on convictions for the simple firearm offense. In remanding Tran's case, we leave undisturbed all of the district court's findings and conclusions with regard to the sentence to be imposed against Tran for the bank robbery count. In remanding Som's case, we leave undisturbed all of the district court's findings and conclusions with

regard to the sentence to be imposed against Som for the two bank robbery counts, except that we vacate the court's restitution order because the record does not adequately reflect the district court's consideration of the factors in 18 U.S.C. § 3664(f)(2). Because we vacate the restitution order on this basis, we take no position on the reasonableness of the payment schedule imposed by the district court.