**UNITED STATES of America,
Appellee,**

v.

**James ARGENTINA, Defendant–
Appellant.**

No. 05–1560–CR.

United States Court of Appeals,
Second Circuit.

March 29, 2006.

Allen L. Bode (David C. James, on the brief), Assistant United States Attorneys, for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

Kevin J. Keating, Garden City, NY, for Defendant–Appellant.

PRESENT: Hon. JOSEPH M. MCLAUGHLIN, Hon. BARRINGTON D. PARKER, Circuit Judges, and Hon. WILLIAM K. SESSIONS III, Chief District Judge.*

## SUMMARY ORDER

### SUMMARY ORDER

James Argentina appeals from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), following his conviction for conspiracy to distribute and possess with intent to distribute ecstasy and marijuana in violation of 21 U.S.C. § 846, possession with intent to distribute more than 500 grams of cocaine, ecstasy, and marijuana in violation of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(C) & 841(b)(1)(D), conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a), conspir-

---

* The Honorable William K. Sessions III, Chief United States District Court Judge for the District of Vermont, sitting by designation.

acy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) & 1956(a)(1)(B)(i), and carrying a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(ii). We assume familiarity with the underlying facts and procedural history.

Appellant essentially raises five issues on appeal. First, he claims that the district court violated his Sixth Amendment rights by empaneling a partially-anonymous jury. Second, he contends that the district court improperly admitted into evidence cooperation agreements of certain Government witnesses. Third, he contends that the district court improperly allowed certain witnesses to make in-court identifications. Fourth, he argues that one drug dealer robbing (or in this case, re-robbing) another does not have a sufficient effect on interstate commerce to support his conviction under 18 U.S.C. § 1951. Fifth, Argentina argues that the district court "double-counted" his use of a firearm in its Sentencing Guidelines calculation, and he proffers new evidence that he was not, in fact, a career offender.

As explained below, we affirm the district court on all these issues, but, in light of the newly proffered evidence on Argentina's career offender status, we vacate and remand for resentencing.

## I. Partially Anonymous Jury

Argentina challenges the district court's decision, on the Government's motion, to empanel a partially anonymous jury.[1] We review a trial judge's decision to empanel an anonymous jury for abuse of discretion. *United States v. Thai,* 29 F.3d 785, 801 (2d Cir.1994).

Empaneling an anonymous or partially anonymous jury is appropriate when the jury needs protection, and "[t]he law in this Circuit is clear that 'when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights.'" *Id.* at 800 (quoting *United States v. Vario,* 943 F.2d 236, 239 (2d Cir.1991)); *see, e.g., United States v. Aulicino,* 44 F.3d 1102, 1116 (2d Cir.1995); *United States v. Wong,* 40 F.3d 1347, 1377 (2d Cir.1994); *Thai,* 29 F.3d at 800–01; *United States v. Amuso,* 21 F.3d 1251, 1264 (2d Cir.1994); *United States v. Paccione,* 949 F.2d 1183, 1192–93 (2d Cir. 1991); *Vario,* 943 F.2d at 240; *United States v. Tutino,* 883 F.2d 1125, 1132–33 (2d Cir.1989); *United States v. Persico,* 832 F.2d 705, 717 (2d Cir.1987); *United States v. Thomas,* 757 F.2d 1359, 1364–65 (2d Cir.1985); *United States v. Barnes,* 604 F.2d 121, 141 (2d Cir.1979). The use of an anonymous jury requires the court to conduct "a careful voir dire designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities." *Aulicino,* 44 F.3d at 1116; *see also Paccione,* 949 F.2d at 1192; *Tutino,* 883 F.2d at 1132.

■ In support of its application for a partially anonymous jury, the Government established, both in its written submissions and at an evidentiary hearing, *inter alia:* (1) Argentina's violent criminal history, based on the kidnap and robbery at gunpoint in this case and a prior conviction for participating in the kidnaping, torture, and murder of an individual that Argentina and his associates believed to have been a police informant; (2) Argentina's links to two gangs (the Almighty Latin Kings and the Legion of Doom) and organized crime; (3) Argentina's overt and veiled threats to various co-conspirators and victims of both the instant kidnaping and robbery, and his

---

1. In this case, the jury was only "partially" anonymous because the village or town in which the juror resided was revealed to the parties.

prior conviction for kidnaping, in an attempt to keep them from testifying against him; and (5) the almost daily news coverage of Argentina's prior trial for the kidnap and murder of a suspected police informant. In light of these showings, we cannot say that the district court abused its "broad discretion" in empaneling a partially anonymous jury. *Wong,* 40 F.3d at 1376.

## II. Admission of cooperation agreements

Argentina challenges the admission of Eric Campan's and Richard Claudio's cooperation agreements with the Government, and we review these rulings for abuse of discretion. *See United States v. Ford,* 435 F.3d 204, 214 (2d Cir.2006).

"Because of the bolstering potential of cooperation agreements ... we have permitted such agreements to be admitted in their entirety only after the credibility of the witness has been attacked." *United States v. Cosentino,* 844 F.2d 30, 33 (2d Cir.1988). When defense counsel persistently attacks the cooperating government witness's credibility, a district court rightly permits "the government to introduce into evidence the various cooperation agreements and to elicit testimony about each cooperating witness's understanding of what his agreement required-specifically, to tell the truth." *United States v. Carr,* 424 F.3d 213, 228 (2d Cir.2005). Such an attack may come in a defendant's opening statement, *Cosentino,* 844 F.2d at 33, or at any point during examination of the Government's witnesses.

■ Here, defense counsel attacked the Government witnesses credibility in his opening statement, and directly questioned Campan about the provisions of his cooperation agreement. Defense counsel also questioned Claudio about benefits he would receive by cooperating under a cooperation agreement in a different case.

Though defense counsel did not specifically reference Claudio's cooperation agreement, the district court admitted it to prevent the jury from being confused by the fact that Claudio was testifying under a cooperation agreement from a different case, under a different indictment. Under these circumstances, we find no abuse of discretion.

## III. Admission of certain identification evidence

Argentina challenges the in-court identifications made by Eric Campan and Anthony Curatola. We review a district court's determination of the admissibility of identification evidence for clear error. *United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001).

An identification should be excluded only where it is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. Bautista,* 23 F.3d 726, 729 (2d Cir.1994). However, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *United States v. Simmons,* 923 F.2d 934, 950 (2d Cir.1991). "The reliability of an in-court identification is determined by weighing the degree of suggestiveness of the pretrial procedures against factors suggesting that the in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *United States v. Salameh,* 152 F.3d 88, 126 (2d Cir.1998) (internal citations, quotation marks, and alterations omitted); *see also Wong,* 40 F.3d at 1359.

Argentina claims that Campan was shown a series of pre-trial photo arrays that were impermissibly suggestive because a computer "randomly" placed each

target photograph in position number five.[2] Argentina also claims that Campan's identification was not reliable because Campan had made prior misrepresentations to the probation department and at his plea allocution. Finally, Argentina claims that Curatola's identification from photo arrays was not reliable because Curatola only identified Argentina as "similar" to the driver of the car.

■ These pretrial identifications were evaluated by the district court in a hearing pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and deemed admissible. The district court committed no error in deciding that the repeated placement of the target in position five was not unnecessarily suggestive and conducive to irreparable mistaken identification. But, as the district court noted, even if this procedure was unnecessarily suggestive, there were sufficient independent grounds for both Campan and Curatola to make an in-court identification. Even brief glimpses and short conversations may support a finding of independent reliability of an identification. *See Salameh*, 152 F.3d at 125–26; *Wong*, 40 F.3d at 1360; *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir.1992). Campan had a half-hour meeting with Argentina to discuss the retrieval of Campan's drugs, and Curatola was able to view Argentina unmasked for several hours during the robbery. Campan and Curatola had good reason to pay close attention to Argentina: Campan was hiring him to steal back his drugs, and Curatola was Argentina's prisoner held at gunpoint during the robbery. The effect of the four-year elapsed time between the robbery and the identification was thus mitigated by other factors which established a suffi-

cient independent basis for both Campan's and Curatola's identifications of Argentina. *See United States v. Tortora*, 30 F.3d 334, 338–39 (2d Cir.1994).

■ Finally, even if Campan's and Curatola's pretrial identifications were suggestive, and there was no independent basis for their identifications, any error in admitting the identification testimony of Campan or Curatola was harmless. The Government presented four other witnesses who knew Argentina well, and directly implicated him. *See Eltayib*, 88 F.3d at 167–68; *Concepcion*, 983 F.2d at 379.

IV. Interstate commerce nexus under 18 U.S.C. § 1951

Argentina next challenges the sufficiency of the evidence of a nexus with interstate commerce on his conviction for conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951. "We review a sufficiency of the evidence challenge in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of witnesses' credibility." *United States v. Fabian*, 312 F.3d 550, 553 (2d Cir.2002).

If the defendant's conduct "produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold prosecution under the Hobbs Act." *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir.2002) (internal quotation marks omitted). "Our precedent requires the government make only a *de minimis* showing to establish the necessary nexus for Hobbs Act jurisdiction." *Fabian*, 312 F.3d at 554. The jurisdictional nexus can be satisfied by showing that

---

**2.** Whether Anthony Curatola also was shown a similar set of pictures (*i.e.,* with the target repeatedly in position five) is unclear from the record, but this ultimately does not impact our decision.

the victim directly participated in interstate commerce; that the victim was targeted because of her status as an employee at a company participating in interstate commerce; that the harm or potential harm to the individual would deplete the assets of a company engaged in interstate commerce; that the crime targeted the assets of a business rather than an individual; or that the individual was extorted of a sum so large, or targeted in connection with so many individuals, that the amount at stake cumulatively had some effect on interstate commerce.

*Perrotta,* 313 F.3d at 37–38.

Drug dealing is a business, that, "while illegal, [has] an effect on interstate commerce." *Fabian,* 312 F.3d at 555. Robbery of a drug dealer can have an effect on interstate commerce, if the underlying acts of drug dealing affect interstate commerce. *See Fabian,* 312 F.3d at 555; *United States v. Jamison,* 299 F.3d 114, 120 n. 2 (2d Cir.2002); *see also United States v. Moore,* 363 F.3d 631, 636 (7th Cir.2004), *rev'd on other grounds by Young v. United States,* 543 U.S. 1100, 125 S.Ct. 1019, 160 L.Ed.2d 1001 (2005); *United States v. Williams,* 342 F.3d 350, 354 (4th Cir.2003).

■ The Government presented ample evidence of the interstate nature of the drugs at issue in this case—*e.g.,* the marijuana came from British Columbia, the ecstasy came from Holland, and the cocaine came from outside New York State. The victim of Argentina's robbery was participating in interstate commerce (drug dealing), and Argentina and his associates stole a significant quantity of marijuana, cocaine, ecstasy, and money which they were, in turn, going to put back into interstate commerce by engaging in drug trafficking. Moreover, Argentina conspired to rob actual goods in interstate commerce—the physical inventories of the various drug trafficking businesses.

## V. Sentencing issues

Argentina objects to the district court's five-level enhancement to his base offense level pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2B3.1(b)(2)(C) for brandishing a weapon during the commission of the robbery. We review a district court's legal conclusions with respect to the application of the Guidelines *de novo. United States v. Fuller,* 426 F.3d 556, 562 (2d Cir.2005).

Argentina argues that the district court erred in applying the five-level brandishing of a weapon adjustment under U.S.S.G. § 2B3.1(b)(2)(C) because Argentina must also serve a mandatory consecutive seven-year sentence for carrying a weapon in the commission of a crime under 18 U.S.C. § 924(c). Argentina argues that this five-level Guidelines enhancement and the seven year mandatory sentence under 18 U.S.C. § 924(c) constitute "double counting" of the gun offense.

■ However, the indictment explicitly linked the 18 U.S.C. § 924(c) offense to the drug offenses, and not the robbery offense. We have previously held that double counting does not occur when a 18 U.S.C. § 924(c) count involved one criminal act, while a firearms enhancement involved a separate criminal act, even if the two acts are ultimately grouped for sentencing purposes. *See United States v. Tran,* 234 F.3d 798, 811–12 (2d Cir.2000), *overruled on other grounds by United States v. Thomas,* 274 F.3d 655 (2d Cir.2001); *see also United States v. Pringle,* 350 F.3d 1172, 1181 (11th Cir.2003). *Tran* controls this case. The district court did not double count Argentina's use of a weapon because the 18 U.S.C. § 924(c) offense is linked to the drug offenses, and the firearm enhancement under U.S.S.G.

§ 2B3.1(b)(2)(C) is linked to the separate robbery offense.

However, the Government concedes to a remand for re-sentencing because Argentina has proffered new evidence that appears to demonstrate that Argentina does not qualify as a career offender under U.S.S.G. § 4B1.1. We therefore vacate Argentina's sentence, and remand for resentencing in light of this newly presented evidence.

## CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and REMAND to the district court with instructions to vacate defendant's sentence, and conduct resentencing consistent with this order.